UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

FEB - 1 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA,

    v.

ACTION NO. 2:12cr37

CRAIG PHILLIPS

and

TERRI LYNN NAGY-PHILLIPS,

    Defendants.

IN RE: THIRD PARTY CLAIMS BY:

KENNETH NAGY and MARILYN NAGY,

TRACEY NAGY,

and

S M PHILLIPS INCORPORATED

## MEMORANDUM OPINION AND ORDER

The Defendants, Terri Lynn Nagy-Phillips and Craig Phillips, pled guilty before Magistrate Judge Douglas E. Miller on July 11, 2012, to Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and Wire Fraud, in violation of 18 U.S.C. § 1343. On July 13, 2012, the court entered the Consent Orders of Forfeiture as to each Defendant, in which various property was forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461 (c), and 18 U.S.C. § 982(a)(2)(A). (ECF Nos. 38 & 39.)

This matter now comes before the court on Kenneth and Marilyn Nagy's Petition for Forfeiture of Property, filed on September 26, 2012 (ECF No. 48), S M Phillips Incorporated's Petition for Interest in Forfeited Property, filed on September 28, 2012 (ECF Nos. 53 & 54),[1] and Tracey Nagy's Petition for Interest in Forfeited Property, filed on October 1, 2012 (ECF No. 56). The United States moved to strike all three Petitions on November 26, 2012, November 27, 2012, and November 30, 2012, respectively. (ECF Nos. 80, 81, & 82.) Kenneth and Marilyn Nagy responded to the Government's Motion to Strike on December 7, 2012 (ECF No. 83), to which the Government replied on December 14, 2012 (ECF No. 85). S M Phillips Incorporated ("S M Phillips") and Tracey Nagy did not respond to the Government's Motions to Strike, and the time for them to do so elapsed on December 14, 2012.

Because of a potentially dispositive timeliness issue that was not addressed in the parties' filings, on December 31, 2012, the court ordered supplemental briefing on the issue of timeliness, including the court's authority to consider an untimely third-party petition with agreement of the parties. (ECF No. 86.) Such briefing has been filed, and the court will now consider the United States' Motions to Strike the Petitions.

---

[1] S M Phillips filed two identical petitions--one in each Defendant's case. (ECF Nos. 53 & 54). Thus, the court will analyze these as one petition.

## I.   Timeliness of Petitions

A person, other than the defendant, wishing to assert a legal interest in forfeited property has thirty (30) days from the final publication of notice of the order of forfeiture or his personal receipt of such notice, whichever is earlier, to petition the court for a hearing to adjudicate his alleged interest in the property.   21 U.S.C. § 853(n)(2).   Third parties who have not filed a timely petition may not object to the final order of forfeiture.   Fed. R. Crim. P. 32.2(c)(2).

On September 5, 2012, the United States filed a Notice of Publication, certifying that notice of forfeiture had been published for thirty (30) consecutive days on an official government website, beginning on July 19, 2012, and ending on August 17, 2012.   (ECF No. 44.)   The United States also sent written notices to each of the Petitioners.   Gov't's Resp. Timeliness, ECF No. 89.   S M Phillips received this notice on August 30, 2012,   Kenneth   Nagy   and   Tracey   Nagy   on September 1, 2012, and Marilyn Nagy on September 6, 2012.   Id. The written notices contained the language of 21 U.S.C. § 853(n) setting forth the time period for filing petitions.   Id. However, the notices also informed the recipients that "they had 30 days from the receipt of the notice in which to file their petitions."   Id.

3

Under the terms of the statute, the thirty days to bring a petition started to run on August 17, 2012, the final day on which the notice of forfeiture was published on the Government's forfeiture website, i.e., "the final publication of notice." See 21 U.S.C. § 853(n)(2). Thus, the thirty-day period expired on September 16, 2012, before any of the instant Petitions were filed. Nonetheless, because the written notice the Government sent incorrectly informed Petitioners that they had thirty days from receipt of the written notice to file a petition, the court will equitably toll the Petitioners' time for filing a claim and will now consider the merits of the Government's Motions to Strike. See United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Indosuez Bank), 916 F. Supp. 1276, 1284 (D.D.C. 1996) (holding that the timing prescribed by 18 U.S.C. § 1963(l)(2), which contains exactly the same language as 21 U.S.C. § 853(n)(2), is not jurisdictional but instead operates as a statute of limitations subject to equitable tolling).[2]

## II. Standard of Review

Third parties claiming to possess an interest in criminally forfeited property cannot participate in the criminal trial. United States v. McHan, 345 F.3d 262, 270 (4th Cir. 2003). They must instead file a petition under 21 U.S.C. § 853(n) asserting

---

[2] The Government has indicated that it "believes each petition should be considered as timely." Gov't's Resp. Timeliness, ECF No. 89.

4

their legal interest in property that is the subject of a criminal order of forfeiture. This petition must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). There are two ways that a third-party petitioner can assert an interest in forfeited property:

He may demonstrate that (1) he "has a legal right, title, or interest in the property . . . [that] was vested in [him] rather than the [criminal] defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section," [21 U.S.C.] § 853(n)(6)(A), or (2) he "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section. [21 U.S.C.] § 853(n)(6)(B).

United States v. Schecter, 251 F.3d 490, 494 (4th Cir. 2001). While the term "bona fide purchaser for value" is to "be construed liberally," it includes only those "persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return." United States v. Reckmeyer, 836 F.2d 200, 208 (4th Cir. 1987).

Once a petition has been filed, the court must conduct an ancillary proceeding. Fed. R. Crim. P. 32.2(c)(1). "In the

ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Id. When a motion to dismiss a claim has been filed, "procedures analogous to those in the Civil Rules may be followed," including "the prevailing case law on the issue." Fed. R. Crim. P. 32.2(c) advisory committee's note.

Accordingly, as with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(a). Likewise, where the petitioner "'fails to allege all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without a hearing.'" United States v. Allmendinger, No. 3:10cr248, 2012 U.S. Dist. LEXIS 38670, *8 (E.D. Va. Mar. 20, 2012) (quoting United States v. Perkins, 382 F. Supp. 2d 146, 149-50 (D. Me. 2005) (analyzing whether petitioner met the statutory standard of relief under 21 U.S.C. § 853(n)(6) such that the petition could survive a motion to dismiss). As with a civil complaint facing a Rule 12(b)(6) motion to dismiss, "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

6

face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).

### III. Analysis

There are three Petitions before the court, and each Petition addresses the respective Petitioner's purported interest in multiple properties subject to the Consent Orders of Forfeiture. The court will examine each Petition and each property in turn.

### A. Petition of Kenneth and Marilyn Nagy

Kenneth and Marilyn Nagy claim to have a legal right, title or interest in numerous properties subject to the forfeiture order. They allege that such legal right, title, or interest "was vested in them at the time of the commission of the acts which gave rise to the forfeiture." (ECF. No. 48, at 2.) This formulaic recitation of the language of 21 U.S.C § 853(n)(6)(A) will not suffice. <u>See</u> <u>Twombly</u>, 550 U.S. at 555. Rather, for each piece of property the Petitioners must allege facts demonstrating they meet the standard set forth in either 21 U.S.C. § 853(n)(6)(A) or 21 U.S.C. § 853(n)(6)(B).

### 1. Two Gold Rings

The Petitioners assert an interest in two gold rings, which Marilyn acquired in 2004 as a gift from Kenneth. (ECF No. 48 at 2). The Petitioners' pleading with respect to the rings is technically deficient. They have failed to allege the date of

7

the commission of the acts which gave rise to the forfeiture of the rings, which is necessary to prove that their interest was vested or superior to the Defendants' on that date. See 21 U.S.C. § 853(n)(6)(A). Nonetheless, assuming, which the court must, that the Petitioners acquired the rings in 2004, there is no question that the Petitioners have alleged an interest that was vested at the time of the commission of the acts which gave rise to criminal forfeiture since the criminal conduct of which the Defendants were convicted did not commence until 2007. See Statements of Facts ¶ 18, ECF Nos. 29 & 35. Thus, the court will excuse the Petitioners' pleading deficiency, and will hold a hearing to determine whether to amend the order of forfeiture with respect to these rings.[3]

## 2. 2010 Chevrolet Camaro

The Petitioners allege they have an interest in a 2010 Chevrolet Camaro, which they acquired in 2009 and purchased with funds received from a Community Choice Credit Loan. (ECF No. 48, at 2.) The Government counters that Defendant Terri Nagy-Phillips "admitted in her statement of facts that she wrote

---

[3] The United States has indicated that it "is no longer seeking forfeiture the rings," and, therefore, the Petitioners' "claim should be stricken as moot." (ECF No. 80 at 2). The Petitioners rejoin that "as the United States has yet to enter such an order, the issue is not moot." The Petitioners are correct. If the United States indicates at the hearing on the Petitions that it is no longer seeking forfeiture of the rings, the court will amend the final order of forfeiture to so reflect.

8

checks to herself on the victim's account for the purposes of paying finance charges on the Camaro." (ECF No. 80 at 3.) At this stage, however, the court must assume that Kenneth and Marilyn did, in fact, purchase the Camaro with funds from a Community Choice Credit Loan. Fed. R. Crim. P. 32.2(c)(1)(A). Thus, they have sufficiently pled that they are bona fide purchasers for value. Because the facts alleged, when assumed true, demonstrate that the Petitioners meet the standard of 21 U.S.C. § 853(n)(6)(B),[4] this claim will survive the Government's Motion to Strike.

### 3. 1964 Plymouth Fury

The Petitioners allege an interest in a 1964 Plymouth Fury, "acquired in 2008, purchased by Marilyn Nagy and Defendants, with Marilyn Nagy's contribution directed toward the purchase of various automotive parts used in the restoration of said vehicle." (ECF No. 48 at 2). It is unclear whether the Petitioners are seeking to recover the entire Plymouth Fury, or merely certain parts of it.

---

[4] At the hearing, the Petitioners must also prove by a preponderance of the evidence that they were "reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C § 853(n)(6)(B). While the Petitioners have not explicitly stated that they were without cause to believe the property was subject to forfeiture, the court will infer that they were without such cause from the alleged fact that they obtained a loan from a financial institution to purchase the Camaro.

9

To the extent Petitioners have alleged an interest in the entire car, they have failed to plead all of the elements necessary for recovery. They have not alleged that they are bona fide purchasers of the entire car. See 21 U.S.C. § 853(n)(6)(B). Rather, they indicate that Marilyn Nagy's contribution was directed toward the purchase of various automotive parts. (ECF No. 48 at 2.) Thus, to prevail, they would have to demonstrate that their interest in the car was vested in them rather than in the Defendants at the time of the commission of the acts giving rise to the forfeiture of the Plymouth Fury. See 21 U.S.C. § 853(n)(6)(A). To make this showing, they would need to allege both the date they acquired the vehicle, and the date on which the commission of the acts which gave rise to the forfeiture of the Plymouth Fury took place. As the Petitioners have failed to plead any facts regarding the latter date, they "have fail[ed] to allege all the elements necessary for recovery," and their claim to the entire car must be dismissed. See United States v. Allmendinger, No. 3:10cr248, 2012 U.S. Dist. LEXIS 38670, *8 (E.D. Va. Mar. 20, 2012) (quoting United States v. Perkins, 382 F. Supp. 2d 146, 149-50 (D. Me. 2005).

If the Petitioners intend to allege an interest only in certain parts of the Plymouth Fury, this claim too must fail. While the Petitioners have broadly alleged the "time and

10

circumstances" of the acquisition of their interest, they have failed to set forth the "nature and extent" of their interest, which is required under 21 U.S.C. § 853(n)(3). They have not provided sufficient factual matter to state a plausible legal interest in any particular part of the Plymouth Fury. Their alleged interest in "various automotive parts" is simply too vague to permit this claim to survive the Government's Motion to Strike.[5]

## 4. 2007 Harley Davidson Road King

The Petition next asserts an interest in a 2007 Harley Davidson Road King ("Road King"), "acquired in 2007 as a retirement gift from the Defendants, with various motorcycle parts and accessories purchased thereafter by Petitioners." (ECF No. 48 at 2-3.) As the Petitioners do not state the date on which the acts giving rise to the forfeiture of the Road King occurred, they have failed to plead facts demonstrating that they had a vested interest in the Road King "at the time of the commission of the acts which gave rise to the forfeiture of the

---

[5] In their reply brief, Petitioners allege that "additional information concerning the various automotive parts has been provided to the United States through receipts supplied by Petitioners evidencing their purchase of such parts." (ECF No. 83.) While the court must accept as true all well-pleaded allegations, and "may consider documents attached to the complaint" and certain documents attached to the motion to dismiss," Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007), it need not, and indeed cannot, consider evidence that may have been presented to the other party but has not been made part of the court record.

property." 21 U.S.C. § 853(n)(6)(A). Nor do the Petitioners qualify as bona fide purchasers under 21 U.S.C. § 853(n)(6)(B), as their claim to have purchased "various motorcycle parts and accessories" does not sufficiently state the nature and extent of their interest, and is too vague to state a plausible legal interest in any particular part of the Road King. Thus, the Petitions have failed to state a claim for relief with respect to the Road King.

## 5. 2005 Chevrolet Avalanche

The Petitioners assert an interest in a 2005 Chevrolet Avalanche ("Avalanche"), which was acquired in 2005 as a gift from the Defendants, "with various automotive parts and accessories purchased thereafter by Petitioners." Again, by failing to plead the date of the commission of the acts giving rise to the forfeiture of the Avalanche, the Petitioners have failed to allege facts demonstrating that their interest was vested before the commission of the acts giving rise to the forfeiture. See 21 U.S.C. § 853(n)(6)(A). And, as with the Plymouth Fury and the Road King, the facts alleged are insufficient to demonstrate bona fide purchaser status with respect to the motorcycle parts. Indeed, Petitioners' claim to have purchased "various motorcycle parts and accessories" does not sufficiently state the nature and extent of their interest, and is too vague to state a plausible legal interest in any

12

particular forfeited property. Thus, the Petitions have failed to state a claim for relief with respect to the Avalanche.

### 6. Funeral Services for Five Persons

The Petitioners allege that they purchased "portions" of funeral services and related funeral items for five persons, beginning in 1999. The Petitioners offer no facts indicating what "portion" of the services they purchased; they do not even allege the total amount they spent on these services and items. Thus, they have failed to allege the "nature and extent" of their interest in the funeral services and related items, and this claim cannot proceed.

### 7. Business Interest in Sunburst Tanning

The Petitioners allege that they have a business interest in Suburst Tanning, which they purchased in November 2011. The Petitioners do not set forth the "nature and extent" of their interest, as required by 21 U.S.C. § 853(n)(3), failing even to plead any facts indicating the dollar value of their interest. Thus, this claim cannot proceed.

### 8. Swimming Pool

The Petitioners allege they have an interest "in a swimming pool located in the state of Michigan, to which the petitioners contributed $10,000 of their own funds in the summer of 2009." (ECF No. 48, at 3.) The Government counters that the Petitioners "did not in any real sense contribute 'their own

13

funds'" to the swimming pool, since the Petitioners received more than $100,000 in embezzled funds from the Defendants. (ECF No. 80 at 6.) At this stage, however, the court must assume that the Petitioners did, in fact, contribute $10,000 of their own funds to the swimming pool. Fed. R. Crim. P. 32.2(c)(1)(A). Thus, they have sufficiently pled that they are bona fide purchasers for value, and this claim will survive the Government's Motion to Strike.[6]

### 9. $89,290.06 to Marilyn Nagy and $13,445 to Kenneth Nagy

The Petitioners allege an interest in "[c]hecks and charges totaling $89,290.06 in Marilyn Nagy's name and $13,445 in Kenneth Nagy's name, with said amounts being directed to Petitioners for repayment of advances and loans made by Petitioners to Defendants from 2007 through 2011." (ECF No. 48 at 3.)

To prevail, the Petitioners would have to demonstrate that their interest in these checks and charges was vested in them rather than in the Defendants at the time of the commission of the acts giving rise to the forfeiture of the checks and

---

[6] While the Petitioners have not explicitly stated that they were reasonably without cause to believe the swimming pool was subject to forfeiture, the court will infer from the alleged fact that they contributed a significant amount of their own money to the pool that they were reasonably without cause to believe it was subject to forfeiture.

charges.  See 21 U.S.C. § 853(n)(6)(A).[7]  To make this showing,

they would need to allege both the date they acquired the checks

and charges, and the date of the commission of the acts which

gave rise to the forfeiture of the checks and charges.  As the

Petitioners have failed to plead any facts regarding the latter

date, they have "fail[ed] to allege all the elements necessary

for  recovery,"  and  their  claim  must  be  dismissed.    See

Allmendinger,  2012  U.S.  Dist.  LEXIS  38670  at  *8  (quoting

Perkins, 382 F. Supp. 2d at 149-50.

## B. Petition of S M Phillips Incorporated

Petitioner S M Phillips asserts an interest in Sunburst

Tanning, which it allegedly purchased on January 4, 2012.  S M

Phillips  notes  that  it  paid  $3200  and  paid  off  a  lease

obligation of the previous owners in the amount of $8582.75.

(ECF No. 88.)[8]  The United States has expressed doubt as to

whether  S  M  Phillips  actually  paid  consideration  for  the

business.  ECF No. 81 at 3.  Because at this stage all factual

---

[7] 21 U.S.C. 853(n)(6)(B) does not apply as Petitioners are, at
most, unsecured creditors, not bona fide purchasers for value.
See United States v. Schecter, 251 F.3d 490, 496 (4th Cir.
2001).

[8] S M Phillips did not initially plead this in its Petition; the
allegation and accompanying evidentiary support appears in the S
M Phillips' brief on the issue of timeliness.  (ECF No. 90.)
While the supplemental briefing the court ordered should have
been limited to the issue of timeliness, the court will not
ignore this factual allegation now that it is part of the
record.

allegations must be assumed true, S M Phillips has adequately alleged that it is a bona fide purchaser for value. S M Phillips has also alleged that it was reasonably without cause to believe the property was subject to forfeiture. (ECF No. 90 at 2.)[9] While the United States argues that S M Phillips did, in fact, have cause to believe the property was subject to forfeiture, the court must assume the veracity of S M Phillips' allegation for the time being. Thus, the Petitioner has pled facts sufficient to demonstrate that it qualifies under 21 U.S.C. § 853(n)(6)(B) as a bona fide purchaser for value, and this claim survives the Government's Motion to Strike.

## C. Petition of Tracey Nagy

### 1. 2002 Harley Davidson Motorcycle

Tracey Nagy alleges she has an interest in a 2002 Harley Davidson motorcycle, which she purchased from Defendant Terri Nagy-Phillips in October 2011 "through monthly installments of $1,445, of which the $5,000 purchase price has been paid in full." (ECF No. 56 at 2.) The Petitioner also alleges that she "was, at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." Id. The Government counters that since the Petitioner acknowledges receiving $15,422.20 from the Defendant, it was actually the

---

[9] While this allegation did not appear in the Petitioners' initial pleading, the court will nonetheless consider it. See supra note 8.

Defendant's money, not the Petitioner's money, that was used to purchase the motorcycle. (ECF No. 82 at 3.) At this stage, however, the court must assume as true the alleged fact that Petitioner purchased the motorcycle with her own funds. Fed. R. Crim. P. 32.2(c)(1)(A). Thus, the Petitioner has sufficiently pled that she qualifies under 21 U.S.C. § 853(n)(6)(B) as a bona fide purchaser for value, and this claim will survive the Government's Motion to Strike.

## 2. $15,522.20 to Tracey Nagy

The Petitioner alleges an interest in "[c]hecks and charges totaling $15,422.20 in Tracey Nagy's name, with said amounts being directed to Petitioners for repayment of advances and loans made by Petitioners to Defendants from 2007 through 2011." (ECF No. 56 at 2.)

As previously stated, to prevail, the Petitioner would have to demonstrate that her interest in these checks and charges was vested in her rather than in the Defendants at the time of the commission of the acts giving rise to the forfeiture of the checks and charges. See 21 U.S.C. § 853(n)(6)(A).[10] To make this showing, she would need to allege both the date they acquired the checks and charges, and the date of the commission

---

[10] Again, 21 U.S.C. 853(n)(6)(B) does not apply as the Petitioner is, at most, an unsecured creditor, not bona fide purchasers for value. See United States v. Schecter, 251 F.3d 490, 496 (4th Cir. 2001).

of the acts which gave rise to the forfeiture of the checks and charges. As the Petitioner not pled any facts regarding the latter date, she has "fail[ed] to allege all the elements necessary for recovery," and this claim must be dismissed. See Allmendinger, No. 2012 U.S. Dist. LEXIS 38670 at *8 (quoting Perkins, 382 F. Supp. 2d at 149-50.

## IV. Conclusion

For the reasons stated above, the United States' Motion to Strike the Petition of Kenneth and Marilyn Nagy (ECF No. 80), is **GRANTED** with respect to claims involving the Plymouth Fury, the Harley Davidson Road King, the Chevrolet Avalanche, the Funeral Services, Sunburst Tanning, and the checks and charges. The Motion to Strike (ECF No. 80), is **DENIED** with respect to the claims involving the gold rings, the Chevy Camaro, and the swimming pool. The United States' Motion to Strike the Petition of S M Phillips Incorporated (ECF No. 81), is **DENIED**. The United States' Motion to Strike the Petition of Tracey Nagy (ECF No. 82), is **GRANTED** with respect to the claim involving cash and checks, and **DENIED** with respect to the claim involving the Harley Davidson motorcycle.

The United States, counsel for Kenneth and Marilyn Nagy, S M Phillips, and Tracey Nagy, are **DIRECTED** to contact the Calendar Clerk on or before February 15, 2013, to set a hearing

18

on the remaining claims before United States Magistrate Judge Douglas E. Miller, pursuant to the Referral Order filed herewith.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the United States Attorney at Norfolk, to counsel for Kenneth and Marilyn Nagy, to counsel for S M Phillips Incorporated, and to Tracey Nagy.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Chief
United States District Judge

_____
REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

February \ , 2013